## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JD ELLIS, Individually and on Behalf of All Other Persons Similarly Situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| -vs- | ) )  Case No. CIV-21-308-F |
| LOVE'S TRAVEL STOPS & COUNTRY STORES, INC., | ) ) ) |
| Defendant. | ) ) |

## <u>ORDER</u>

Plaintiff, JD Ellis, brings this collective action against defendant, Love's Travel Stops & Country Stores, Inc., seeking relief under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201, *et seq*. Specifically, plaintiff seeks recovery of unpaid overtime compensation for himself and similarly situated employees who worked for defendant as exempt-classified operation managers or in similar job positions with different titles. In response to the complaint, defendant has moved to dismiss the action and compel arbitration or, in the alternative, to compel arbitration and stay the action. Doc. no. 20. Plaintiff and opt-in plaintiffs have responded, opposing the requested relief. Doc. no. 27. Additionally, plaintiff and opt-in plaintiffs have moved for an order invalidating the arbitration agreements and enjoining defendant from further improper communications with plaintiff, opt-in plaintiffs, and putative collective action members. Doc. no. 28. Defendant has replied in support of its motion and has responded in opposition to plaintiffs' motion. Doc. nos. 35 and 36. Plaintiff and opt-in plaintiffs have replied in support of their

motion.  Doc. no. 39.  Upon due consideration of the parties' submissions, the court makes its determination.

I.

Plaintiff was employed by defendant as an operations manager from approximately November 2015 to August 2017 and again from May 2018 to January 3, 2021.[1]  During his employment, plaintiff was classified as an exempt managerial employee under the FLSA and therefore not paid overtime wages.

In 2017, plaintiffs, Zachary Given,[2] Kristopher Lawson, Vincent McCleery, and Sean McMurran, filed an FSLA collective action against defendant in the Middle District of Pennsylvania, Lawson v. Love's Travel Stops & Country Stores, Inc., Case No. 17-CV-1266-CCC-MCC (Lawson Collective Action), on behalf of current and former operations managers employed at defendant's stores.  They complained they were misclassified as exempt managerial employees and did not receive overtime wages.  Mr. Ellis was an opt-in plaintiff in the Lawson Collective Action.  The parties notified the court of a settlement in July of 2020.  They consented to magistrate judge jurisdiction for settlement approval purposes.  The settlement was approved, and the case was dismissed with prejudice in February of 2021.  The court, however, retained jurisdiction to enforce the settlement until the conclusion of the settlement administration process.[3]  Doc. no. 27-1 and doc. no. 27-2.

As an opt-in plaintiff, Mr. Ellis released his unpaid overtime compensation claims against defendant through October 14, 2020.  He seeks to prosecute FLSA

---

[1] Plaintiff is still employed by defendant as an operations manager, but on January 3, 2021, he was reclassified as an employee non-exempt from the overtime wage requirements.

[2] Mr. Given's claim against defendant was ultimately dismissed by the court.

[3] According to plaintiffs, the settlement funds were released by the third-party administrator on June 25, 2021.

2

claims on behalf of all operations managers employed from April 7, 2018 to the entry of judgment in this case, excluding any time worked prior to October 14, 2020, by any operations manager who opted into and released claims via participation in the settlement of the Lawson Collective Action.

In its motion, defendant asserts that on April 11, 2021, Ellis accessed a Mutual Dispute Resolution Agreement (MDRA) and agreed to its terms.  The MDRA was accessed through the company's Talent Stop Learning program.   Defendant contends that under that agreement, plaintiff expressly agreed to arbitrate the unpaid overtime claims asserted in the collective action complaint.  Defendant also contends that Mr. Ellis agreed to proceed with his claims on an individual, as opposed to a collective, basis.  Because an arbitration agreement exists between the parties and plaintiff's claims fall within that agreement, defendant maintains that the court must compel arbitration of the claims pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 4.  Defendant also maintains that the court must enforce the agreement with respect to Mr. Ellis's waiver of collective actions.  Defendant argues for dismissal of the action since all of plaintiff's claims are subject to arbitration, or alternatively, for a stay of the action pending arbitration proceedings pursuant to the FAA, 9 U.S.C. § 3.

Plaintiff and opt-in plaintiffs assert that the court should declare the arbitration agreements unenforceable based upon unconscionability.   They contend that defendant, with full knowledge that Mr. Ellis was represented by counsel and intended to file this action, contacted him, as well as the putative collective action members in this action, to execute the arbitration agreements containing class and collective action waivers which would impact their ability to participate in this lawsuit.  Plaintiff and opt-in plaintiffs maintain that defendant (1) failed to advise the court or plaintiffs' counsel about the communications; (2) failed to advise the putative collective action members required to sign the arbitration agreements about

this lawsuit; (3) failed to inform the putative collective action members of the impact signing the arbitration agreements would have on their collective rights in this lawsuit; (4) failed to inform Mr. Ellis of the impact the arbitration agreement would have on his pending action and failed to advise him to consult with his counsel before signing; (5) failed to advise the court, plaintiffs' counsel and the putative collective action members that were actively participating in the Lawson Collective Action that the arbitration agreements might directly impact plaintiff and the putative collective action members' recourse provisions in the settlement agreement; and (6) failed to provide a clear and unambiguous opportunity to reject the arbitration agreements. Plaintiff contends that even if the arbitration agreements are not *per se* unconscionable, the court should decline to enforce them under its broad discretionary powers to limit misleading, coercive and improper class communications. Plaintiffs contend that they do not seek to invalidate the agreements in their entirety, just the parts that would prevent operations managers from joining this lawsuit. Plaintiffs also request the court to enjoin defendant from any further improper communications with the plaintiff, opt-in plaintiffs and putative collective action members.

## II.

"The FAA reflects the fundamental principle that arbitration is a matter of contract." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010). Section 2, the primary substantive provision of the FAA, provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

4

"The FAA thereby places arbitration agreements on an equal footing with other contracts . . . and requires courts to enforce them according to their terms." Rent-A-Center, West, Inc., 561 U.S. at 67 (citations omitted). "Like other contracts, however, they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id*. at 68 (quoting Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).

As has been noted, plaintiff and opt-in plaintiffs challenge the validity of the arbitration agreements on the basis of unconscionability. The court rejects this challenge. The court concludes that plaintiff and opt-in plaintiffs have not demonstrated that the arbitration agreements are unconscionable.

Plaintiffs contend that the arbitration agreements are unconscionable because defendant, in distributing the MDRA to plaintiff, opt-in plaintiffs and putative collective action members, never mentioned the existence of this lawsuit or the pending settlement in the Lawson Collective Action. Plaintiffs point out that courts have ruled that in the absence of candid disclosure regarding pending litigation, it is unconscionable to allow a defendant, through implementation of an individual arbitration agreement, to nullify the rights of the collective action members.

The evidence in the record reveals that defendant began the roll-out of the MDRA documents (a video, the MDRA form and "How We Resolve Disputes" form) for new hires in October of 2020. It also reveals that defendant rolled out the MDRA documents to team members (non-managerial employees), who started prior to October 15, 2020, in March of 2021, and upon discovery that the MDRA documents were not rolled out to managerial employees, such as the plaintiff, opt-in plaintiffs, and putative collective action members, in March of 2021, defendant

rolled out the MDRA documents on April 7, 2021.[4]  This action was filed the same day, April 7, 2021.  Defendant was not served with the complaint and summons until April 12, 2021.

The court concludes that it was not unconscionable for defendant to omit any information about this lawsuit in the MDRA documents when it had not yet been served with the complaint and summons.  Although plaintiffs assert that they notified defendant, via defense counsel in the Lawson Collective Action, of their intent to file a lawsuit on March 3, 2021, and notified defendant, via the same defense counsel, that the complaint had been filed on April 7, 2021, the court notes that plaintiffs do not proffer any evidence of these communications.  They are only factual statements in their briefs.  Doc. no. 27, ECF pp. 8-9; doc. no. 39, ECF p. 5. Under Rule 7.1(j) of the court's Local Civil Rules, "[f]actual statements . . . appearing only in briefs shall not be deemed to be a part of the record in the case,

---

[4] In support of its motion, defendant submitted the Affidavit of Kate Griggs.  She averred that defendant rolled out the MDRA to then-current employees who were not already covered and who were hired before October 15, 2020 on "August 9, 2020."  Doc. no. 20-2, ¶ 3.  Upon inquiry from plaintiffs' counsel to clarify whether "August 9, 2020" was correct or should be August 9, 2021, defendant's counsel responded by email that it should be April 9, 2021.  Doc. no. 39-1.  With its reply, defendant submitted another affidavit of Ms. Griggs.  She stated that the MDRA documents were assigned through the Talent Stop Learning program to team members (non-managerial employees) on March 16, 2021, and after she learned on April 2, 2021 that the MDRA documents had not been sent to managerial employees on March 16, 2021, the MDRA documents were sent to those employees on April 7, 2021.  Doc. no. 35-1, ¶¶ 5-6.  Although the evidence presented by Ms. Grigg is new, the court concludes that it need not grant plaintiffs an opportunity to file a surreply before considering it.  "'[W]here the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for [granting the motion], reply papers—both briefs and affidavits—may properly address those issues.'" Santich v. Vcg Holding Corp., Case No. 17-cv-00631-RM-MEH, 2017 WL 11547358, at *2 (D. Colo. Aug. 10, 2017) (quoting Altamirano v. Chem. Safety & Hazard Investigation Bd., 41 F. Supp. 3d 982, 993 (D. Colo. 2014) (quoting Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1134 (n. 1 (7th Cir. 1996)).  Nonetheless, even if the MDRA documents were rolled out to then-current employees on August 9, 2021 rather than August 7, 2021, the court is not satisfied that defendant's communications were misleading, coercive or improper when defendant communicated before it had been served with process.

unless specifically permitted by the court."  In any event, plaintiffs admit that they did not provide defense counsel with any proposed complaint on March 3, 2021, and they do not represent in reply that the filed complaint was provided to defense counsel on April 7, 2021.  Plaintiffs provide no evidence or authority to establish that notice to defense counsel in the Lawson Collective Action constitutes notice to defendant.  Defense counsel in the Lawson Collective Action do not represent defendant in this action.  And there is no evidence they were involved in the roll out of the MDRA documents.  There is nothing in the record to establish that defendant received notice of the collective action complaint until it was served with process on April 12, 2012, after the MDRA documents had been rolled out to managerial employees.[5]  Consequently, the court concludes that defendant was not required to advise the plaintiff, opt-in plaintiffs and putative collective members of this lawsuit. The communication to the plaintiff, opt-in plaintiffs and putative collective members without mention of the pendency of this action was not misleading.[6]

While plaintiffs cite cases finding agreements to be unconscionable where the agreements omitted the existence of pending lawsuits, the facts in those cases are clearly distinguishable from the case at bar.  *See*, OConner v. Agilant Solutions, Inc., 444 F. Supp. 3d 593, 603-604 (S.D.N.Y. 2020) (company rolled out arbitration agreement to employees after plaintiffs filed their motion for conditional

---

[5] Mr. Ellis also accessed and agreed to the MDRA prior to service of process upon defendant.

[6] Plaintiffs also complain that defendant failed to inform Mr. Ellis of the impact signing the MDRA would have on the pending action and failed to advise him to consult his attorney before signing. They also complain that defendant failed to inform the putative collective action members of the impact signing the MDRA would have on their collective rights.  They further complain that defendant did not give notice to the court or plaintiffs' counsel of their communications to the employees.  However, because defendant did not have notice of (i) the pending lawsuit when it rolled out the MDRA and (ii) that plaintiffs' counsel were representing Mr. Ellis and putative collective action members with regard to the action, the court concludes defendant did not have a duty to inform or advise as argued by plaintiffs.

certification in a pending FLSA case); In re Currency Conversion Fee Antitrust Litigation, 361 F. Supp. 2d 237, 251 (S.D.N.Y. 2005) (issuing banks modified credit cardholder agreements to include an arbitration agreement during the pendency of the litigation); *see also*, Anthony Nguyen v. Inter-Coast International Training, Inc., Case No. B270305, 2018 WL 1887347, at *1 (Cal. Ct. App. Apr. 20, 2018) (company revised its employee handbook to add an arbitration provision approximately one year after plaintiff filed action and later revised its employee handbook several times containing the same arbitration provision). The court concludes that the authority cited by plaintiffs does not warrant a finding of unconscionability based upon defendant's failure to advise the plaintiff, opt-in plaintiffs and putative collective action members of this lawsuit.[7]

The court also rejects plaintiffs' argument that defendant's communication to the plaintiff, opt-in plaintiffs and putative collective action members was an improper attempt to coerce employees not to participate in this action. As the record evidence establishes, defendant rolled out the arbitration agreements on the same date as this action was filed. Defendant had not been served with the complaint and summons. These circumstances differ plainly and materially from the circumstances present in the primary cases relied upon by plaintiffs. *See*, Billingsley v. Citi Trends, Inc., 560 Fed. Appx. 914 (11th Cir. 2014) (company devised and implemented a new

---

[7] Plaintiffs also complain that defendant failed to mention the existence of the pending settlement in the Lawson Collective Action and that the MDRA may curtail preexisting contractual rights with respect to the settlement. There is no evidence that defendant has attempted to enforce the MDRA with respect to any settled claims. Moreover, plaintiffs represent that the settlement funds have been released. In their motion, plaintiffs do not seek to declare the MDRA unenforceable as to the preexisting contractual rights. They only seek to invalidate the MDRA to the extent operations managers are prevented from joining this action. Further, the Lawson Collective Action is not pending litigation. It was dismissed prior to the roll out of the MDRA documents to the plaintiff, opt-in plaintiffs and putative collective action members. In light of these circumstances, the court finds plaintiffs' arguments do not suffice to support a conclusion that the MDRA is unconscionable and consequently unenforceable.

alternative dispute resolution policy in the late spring and early summer of 2012, after it was served with the complaint in February 2012, and then rolled out its policy after the court's May 31, 2012 scheduling order, and sent human resources representatives to meet with the putative collective action members to get them to sign the new policy); Degidio v. Crazy Horse Saloon and Restaurant, Inc., 880 F.3d 135 (4th Cir. 2018) (company began entering into arbitration agreements more than one year after the action began, the agreements presented painted a false picture of potential plaintiffs' legal posture and the agreements were obtained after plaintiffs met with the company's CFO or counsel); OConner, 444 F. Supp. 3d at 598-599, 603 (company rolled out arbitration agreements after plaintiffs filed motion for conditional certification, defense counsel were intimately involved in the rollout, management asked employees to return the arbitration agreements within two business days and employees were required to sign the arbitration agreements as a condition of continued employment).[8]  The facts in this case do not demonstrate that the manner in which defendant distributed the MRDA was "clearly designed to thwart unfairly the right of [employees] to make an informed choice as to whether to participate in this FLSA collective action."  Billingsley, 560 Fed. Appx. at 922.

Plaintiffs challenge the arbitration agreements because defendant used the Talent Stop Learning program to roll out the agreements.  However, the evidence in the record demonstrates that defendant utilized that platform for matters other than training materials.  For example, defendant used the platform to roll out policies related to COVID-19 and safety and human resources forms such as the Drug and Alcohol Policy, Employee Transaction Policy and E-Pay Policy.  The court is not

---

[8] The circumstances of this case are also distinguishable from the other cases cited by plaintiffs in doc. no. 27, ECF pp. 13-16.

convinced the use of the Talent Stop Learning program to present the arbitration agreements was misleading or otherwise rendered the agreements unconscionable.[9]

Further, plaintiffs cite cases where courts have invalidated arbitration agreements pursuant to an inherent authority of the court to control improper communications with class members.  The Supreme Court has stated that a district court "has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." Gulf Oil Co. v. Bernard, 452 U.S. 89, 1000 (1981); *see also*, Hoffmann-LA Roche Inc. v. Sperling, 493 U.S. 165, 171 (1989).  The circumstances of this case, however, are again clearly distinguishable from those cases.  In re Currency Conversion, 361 F. Supp. 2d at 252-254 (issuing banks adding arbitration clauses, without notice, after litigation commenced); Agerbrink v. Model Service LLC, Case No. 14 Civ. 7841 (JPO) (JCF), 2015 WL 6473005, at *1 (Oct. 27, 2015) (email by company's chief operating officer sent to putative collective action members, after the court denied defendant's motion to dismiss on wage and hour claims, setting forth certain tax and discovery matters the members should consider before deciding to talk with plaintiff's counsel); Balasanyan v. Nordstrom, Inc., Case Nos. 11-cv-2609-JM-WMC, 10-cv-2671-JM-WMC, 2012 WL 760566, at **1-4, n. 3  (dispute resolution agreement given to employees at work four months after complaint was filed; employees asked to sign a form acknowledging receipt of information but were told that the acknowledgement was not an agreement).  The record provides no basis for invalidation of the arbitration agreements on the ground of improper communications.  Based upon the record evidence, defendant's communications with the plaintiff, opt-in plaintiffs and putative collective action members were not

---

[9] The court notes that the question of unconscionability is one of state law. *See*, *e.g*., Perry v. Thomas, 482 U.S. 483, 492 n. 9 (1987).  In their papers, plaintiff and opt-in plaintiffs neither cite nor discuss Oklahoma law.

misleading and were not improper communications.[10]  Therefore, the court declines to invalidate the arbitration agreements based upon improper communications.  The court also declines to issue a protective order as requested by plaintiff and opt-in plaintiffs.

III.

Under the FAA, the court must compel arbitration if it finds (1) a valid arbitration agreement exists between the parties; and (2) the dispute before it falls within the scope of the agreement.  Hedrick v. BNC National Bank, 186 F. Supp. 3d 1189, 1191 (D. Kan. 2016) (citing 9 U.S.C. §§ 2-3).  The court concludes that both conditions are satisfied.  As to the second condition, the arbitration agreement clearly and expressly encompasses FLSA claims.  The agreement states in pertinent part:

> Covered Claims include, but are not limited to, claims for wages and other compensation . . . and claims for violation of any federal, state, or other government law, statute, regulation, or ordinance, such as, for example, claims under the . . . Fair Labor Standards Act . . . .

Doc. no. 20-1, ¶ II.

In addition, the agreement also clearly waives collective actions and requires covered claims, such as FLSA claims, to be filed on an individual basis.  The agreement states in pertinent part:

> Covered Claims must be brought on an individual basis only, and arbitration on an individual basis is the single and only remedy for such claims.  No arbitrator has

---

[10] In reply, plaintiff and opt-in plaintiffs suggest defendant has continued to communicate with the putative collective action members after the roll out of MDRA documents on April 7, 2021.  They state: "Putative collective members had no reason to know of this lawsuit in April when defendant distributed arbitration agreements, or *now, as Defendant continues to distribute arbitration agreements after litigation was commenced that impacts putative collective action members rights in this litigation*."  Doc. no. 39, ECF p. 5 (emphasis added).  Plaintiff and opt-in plaintiffs proffer no evidence of continued communication by defendant and the court does not accept the factual statement in briefing as such.  *See*, LCvR 7.1(j).

> authority to consolidate claims or proceed with arbitration
> on multi-plaintiff, class, collective, or representative basis.

Doc. no. 20-1, ¶ IV.

The Supreme Court, in <u>Epic Systems Corp. v. Lewis</u>, 138 S.Ct. 1612 (2018), upheld the enforceability of arbitration agreements waiving collective action procedures for claims under the FLSA.

Turning to the first condition, the court concludes that a valid arbitration agreement exists between Mr. Ellis and defendant.  The record evidence shows that Mr. Ellis scrolled through the MDRA on the Talent Stop Training program, and at the end, selected the option "Agree."[11]  Although Mr. Ellis avers that he does not remember signing a legal, document, a contract, or agreement to arbitrate his claims, he does not dispute that he selected the "Agree" option at the end of the document. <u>See</u>, <i>e.g.</i>, <u>Williams v. TAMKO Building Products, Inc.</u>, 451 P.3d 146, 151 (Okla. 2019) ("Courts presume that a buyer who had the opportunity to read a contract but did not is bound by the unread terms.").  The MDRA did not require a signature from Mr. Ellis.  The court concludes that Mr. Ellis's affidavit is insufficient to create a genuine issue of material fact as to whether a valid agreement to arbitrate exists.

Because (i) a valid agreement to arbitrate exists between the parties, (ii) Mr. Ellis's FLSA claim falls within the scope of the agreement, and (iii) Mr. Ellis has not demonstrated the arbitration agreement is unconscionable, the court concludes that the FLSA claim brought by plaintiff against defendant must be resolved through

---

[11] At the end of the MDRA, Mr. Ellis was given two options, "Agree" or "Disagree."  Doc. no. 20-2, ¶ 5.

arbitration proceedings and the FLSA claim must be brought on an individual basis only.[12]

## IV.

Although defendant has requested dismissal of the action, defendant has alternatively requested a stay of the action pending arbitration proceedings. Section 3 of Title 9 of the United States Code provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

Based upon the plain language of section 3 and defendant's alternative request, the court concludes that a stay should be entered. The court shall, however, for statistical purposes, direct the court clerk to administratively close this action in her records pending the arbitration proceeding.

## V.

For the reasons stated, Defendant's Motion to Dismiss and Compel Arbitration or, in the Alternative, to Compel Arbitration and Stay the Current Judicial Proceedings, filed May 24, 2021 (doc. no. 20), is **GRANTED** to the extent defendant seeks to compel arbitration of plaintiff's FLSA claims against defendant in plaintiff's individual capacity only and to stay the judicial proceedings pending

---

[12] To be sure, some of plaintiff's arguments might have some appeal in a legislative forum. Under existing statutory (the FAA) and decisional (e.g., Epic Systems) authority, it is possible for an arbitration agreement to effectively override the express terms of the FLSA. The question of whether that is something that ought to be set straight, as a matter of federal policy, is a matter for Congress, not the court.

completion of the arbitration proceedings.  The motion is **DENIED** in all other respects.

Plaintiffs' Cross Motion to Invalidate Arbitration Agreements and for a Protective Order Enjoining from Further Improper Communications, filed July 9, 2021 (doc. no. 28), is **DENIED**.

This action is **STAYED** pending completion of the arbitration proceedings. For statistical purposes, the court clerk is **DIRECTED** to administratively close this action in her records pending the arbitration proceedings.  The parties shall notify the court, in writing, within 15 days of the resolution of the arbitration proceedings so that the court may take further action as may be necessary.

IT IS SO ORDERED this 16th day of September, 2021.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-0308p011 rev_.docx