# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES STODDARD, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>        Plaintiff,<br><br>-vs-<br><br>LOVE'S TRAVEL STOPS & COUNTRY STORES, INC.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. CIV-21-308-F<br>)<br>)<br>)<br>)<br>)<br>) |

## **ORDER**

This action was filed against Defendant Love's Travel Stops & Country Stores, Inc. on April 7, 2021, for alleged willful violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201, *et seq.* According to the complaint, defendant misclassified its operations managers as exempt managerial employees and failed to pay them overtime wages for hours worked in excess of 40 hours per workweek. In March of 2022, plaintiff James Stoddard and eleven other individuals filed a motion seeking conditional certification of a collective action under the FLSA, 29 U.S.C. § 216(b), to which defendant objected. The court granted the motion in July of 2022 and approved the court-authorized notice, consent to join form and reminder postcard in September of 2022. Subsequently, a scheduling order was entered in January of 2023, which included a deadline for defendant to file a motion to compel arbitration.

In accordance with the scheduling order, defendant has moved to compel arbitration and stay the current judicial proceedings as to 151 opt-in plaintiffs.[1] According to defendant, these opt-in plaintiffs entered into a Mutual Dispute Resolution Agreement (MDRA), wherein they expressly agreed to arbitrate the FLSA claims asserted in this collective action and further agreed that all FLSA claims would proceed on an individual, as opposed to collective, basis.[2]

Plaintiff and the opt-in plaintiffs object to the enforcement of the MDRA as improperly obtained. They point out that courts have refused to enforce arbitration agreements obtained during the pendency of litigation, where they fail to notify the putative collective of the existence of the pending litigation.[3] Plaintiff and the opt-in plaintiffs specifically request the court to find the MDRA unenforceable as to the opt-in plaintiffs who executed the agreement while represented by counsel in two other FLSA collective actions against defendant[4] and as to the claims asserted in this litigation, where the opt-in plaintiffs executed the MDRA after defendant was aware

---

[1] The total number of opt-in plaintiffs is 356.

[2] Defendant previously moved to compel arbitration of the FLSA claims of plaintiff JD Ellis based on Mr. Ellis's execution of the MDRA. The court granted defendant's motion. In so doing, the court rejected the challenge, by Mr. Ellis and the opt-in plaintiffs, to the validity of the MDRA on the ground of unconscionability. The court specifically found that the MDRA was not unconscionable for omitting the pendency of this lawsuit since defendant rolled out the MDRA to Mr. Ellis before the company was served with the complaint and summons.

[3] *See*, doc. no. 125, ECF pp. 13-14; 18 (citing Billingsley v. Citi Trends, Inc., 560 Fed. Appx. 914, 923 (11th Cir. 2014); In re Currency Conversion Fee Antitrust Litigation, 361 F. Supp. 2d 237, 252-254 (S.D.N.Y. 2005); OConner v. Agilant Solutions, Inc., 444 F. Supp. 3d 593, 603 (S.D.N.Y. 2020); Balasanyan v. Nordstrom, Inc., No. 10-CV-2671-JM-WMC, 2012 WL 760566, at *1-2 (S.D. Cal. Mar. 8, 2012); and Williams v. Securitas Sec. Services USA, Inc., 2011 WL 2713818, at *3 (E.D. Pa. July 13, 2011)).

[4] Lawson v. Love's Travel Stops & Country Stores, Inc., 1:17-cv-01266-CCC (M.D. Pa.) (Lawson Collective Action) and Horton v. Love's Travel Stops & Country Stores, Inc., 1:19-cv-1193 (M.D.N.C.) (Horton Collective Action). The Lawson Collective Action was a collective action of operations managers seeking overtime pay. The Horton Collective Action was a collective action of female operations managers seeking pay differential between themselves and their alleged, better compensated male comparators.

2

of plaintiffs' intention to file this case. In connection to the latter, plaintiffs' counsel, Rebecca S. Predovan, proffers a declaration, averring that on March 3, 2021, her co-counsel, Gregg Shavitz, spoke by telephone with Matt Hank, an attorney who represented defendant in the Lawson Collective Action, advising him that counsel anticipated filing a second collective action against defendant seeking overtime pay on behalf of the operations managers and that the action would be filed shortly.

Although plaintiff James Stoddard and the opt-in plaintiffs have proffered Ms. Predovan's declaration as evidence that they notified defense counsel on March 3, 2021 of their intent to file a second collective action against defendant for overtime pay on behalf of operations managers, the court finds that evidence insufficient to establish that defendant had notice of this lawsuit on that date. There is no showing that plaintiffs' counsel provided defense counsel with the collective action complaint on March 3, 2021. And plaintiffs do not proffer any authority to establish that notice to defense counsel of the Lawson Collective Action would constitute notice to defendant. Defense counsel in the Lawson Collective Action does not represent defendant in this action. And there is no evidence that defense counsel was involved in the roll out of the MDRA to managerial employees, including operations managers. Notwithstanding Ms. Predovan's declaration, the record does not establish that defendant had notice of this lawsuit until it was served with process on April 12, 2021. As such, the court, consistent with its previous ruling in granting defendant's motion to compel arbitration with respect to plaintiff JD Ellis (doc. no. 41), concludes that defendant was not required to advise the opt-in plaintiffs of this lawsuit, if the MDRA was rolled out to them prior to April 12, 2021. The omission of the existence of this lawsuit from the MDRA was not misleading.

As to the opt-in plaintiffs represented by counsel in the Lawson Collective Action and the Horton Collective Action when they executed the MDRA, the court declines to find those agreements unenforceable because they did not mention the

existence of those actions.  Defendant is not seeking, and has not sought, to enforce the MDRA with respect to those actions.  And plaintiffs do not seek a determination that the MDRA is unenforceable as to preexisting contractual rights.  Rather, they seek a determination that the MDRA unenforceable with respect to the 151 opt-in plaintiffs' prosecution of this action.  The court finds that the failure to mention the existence of the pendency of the Lawson Collective Action and the Horton Collective Action did not render the MDRA misleading.  And while opt-in plaintiffs suggest that defendant's submission of the MDRA to its employees was improper since they were represented by counsel at the time, opt-in plaintiffs have presented no authority to support this contention.  The court declines to find the MDRA unenforceable on that basis.

In their briefing, plaintiff and the opt-in plaintiffs assert that defendant continued to seek execution of the MDRA after it was served with the complaint and summons on April 12, 2021.  Plaintiff and the opt-in plaintiffs therefore request the court to refuse to enforce the MDRA as to the opt-in plaintiffs who signed the document after April 12, 2021.  Defendant responds that plaintiff and opt-in plaintiffs fail to present any evidence that the MDRA was rolled out to the opt-in plaintiffs on or after April 12, 2021.  According to defendant, the MDRA was distributed to employees through its Talent Stop Learning program, and the employees could open it up, review it, and execute it at any time.  Defendant maintains that it did not control when the employees could open it and execute it.

The record reflects that 80 of the opt-in plaintiffs, who were employed prior to October 15, 2020, executed the MDRA after April 12, 2021. Doc. no. 123-2, pp. 11-17.  However, there is no evidence before the court that the MDRA was distributed to these employees after April 12, 2021.  In support of its motion, defendant has attached the affidavit of Kate Griggs, defendant's Manager of Field Training Systems, in which she testifies that defendant rolled out the MDRA to its

4

employees through the Talent Stop Learning program in March and April 2021. Doc. no. 123-2, ¶ 3. And Ms. Griggs previously submitted an affidavit testifying that the MDRA was sent to non-managerial employees who started employment before October 15, 2020, on March 16, 2021, and that it was sent to all managerial employees, including operations managers, who started employment before October 15, 2020, on April 7, 2021. Doc. no. 35-1, ¶¶ 5,6. Because the record reveals that the MDRA was rolled out by defendant to the 80 opt-in plaintiffs before it was served with this lawsuit, the court concludes that the omission of the existence of this lawsuit from the MDRA was not misleading to those plaintiffs. The court declines to find the MDRA unenforceable for failing to advise the opt-plaintiffs of the existence of this lawsuit.

As to opt-in plaintiffs who were employed after October 15, 2020, all but one (David O. Spencer), signed the MDRA before April 12, 2021. Doc. no. 123-3. Mr. Spencer signed the MDRA at the end of April. However, the record does not reflect that he was presented with the MDRA after April 12, 2021. Further, defendant has attached the affidavit of Rebekah Surritte, defendant's Manager of Corporate Human Resources, in which she testifies that defendant began to roll out the MDRA for new employees, like Mr. Spencer, through its Human Resources Information System in October 2020. Thus, unlike the cases cited by plaintiffs, the MDRA was not rolled out in response to the present litigation. The court concludes that those cases do not support a finding that the MDRA should not be enforced as to Mr. Spencer.

Under the Federal Arbitration Act (FAA), the court must compel arbitration if it finds "(1) a valid arbitration agreement exists between the parties; and (2) the dispute before it falls within the scope of the agreement." Hedrick v. BNC National Bank, 186 F. Supp. 3d 1189, 1191 (D. Kan. 2016) (citing 9 U.S.C. §§ 2-3). Based on the record, the court concludes that both conditions are satisfied. In addition, the court finds that the agreement between the parties clearly waives collective actions

and requires the FLSA claims to be filed on an individual basis. Because (i) valid arbitration agreements exist between defendant and the 151 opt-in plaintiffs; (ii) the 151 opt-in plaintiffs' FLSA claims fall within the scope of the arbitration agreements; and (iii) the 151 opt-in plaintiffs have not demonstrated that the arbitration agreements should not be enforced, the court concludes that the FLSA claims brought by the 151 opt-plaintiffs must be resolved through arbitration proceedings and the FLSA claims must be brought on an individual basis only. The court also concludes that, pursuant to the FAA, 9 U.S.C. § 3, the current judicial proceedings for the 151 opt-in plaintiffs should be stayed pending arbitration.

Accordingly, Defendant's Motion to Compel Arbitration and Stay the Current Judicial Proceedings for the Opt-In Plaintiffs Listed on Exhibit 1 (doc. no. 123) is **GRANTED**. The 151 opt-in plaintiffs listed on Exhibit 1 of defendant's motion are compelled to pursue their FLSA claims against defendant in their individual capacities only in mandatory, binding arbitration. The current judicial proceedings for the 151 opt-in plaintiffs listed on Exhibit 1 of defendant's motion are **STAYED** pending arbitration.

IT IS SO ORDERED this 1st day of June, 2023.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-0308p024 rev_.docx