IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

---------------------------------------------------------X
JAMES STODDARD, Individually and on :
Behalf of All Other Persons Similarly Situated, :      Civil Action: 5:21-cv-308-F
                                             :
                    Plaintiff, :
                                             :
                  -against- :
                                             :
LOVE'S TRAVEL STOPS & COUNTRY :
STORES, INC. :
                                             :
                   Defendant. :
---------------------------------------------------------X

## PLAINTIFFS' BRIEF IN SUPPORT OF UNOPPOSED MOTION TO APPROVE SETTLEMENT AGREEMENT, INCLUDING AWARD OF ATTORNEYS' FEES AND COSTS

Rebecca S. Predovan*
Marc S. Hepworth*
Charles Gershbaum*
David A. Roth*
**HEPWORTH, GERSHBAUM & ROTH, PLLC**
192 Lexington Avenue, Suite 802
New York, New York 10016

Paolo C. Meireles*
Gregg I. Shavitz*
**SHAVITZ LAW GROUP, P.A**.
951 Yamato Rd, Suite 285
Boca Raton, FL 33431

Mark A. Waller
J. David Jorgenson
**WALLER JORGENSON, PLLC**
401 South Boston Avenue, Suite 500
Tulsa, Oklahoma 74103

# **Table of Contents**

PLAINTIFFS' BRIEF IN SUPPORT OF UNOPPOSED MOTION TO APPROVE
SETTLEMENT AGREEMENT, INCLUDING AWARD OF ATTORNEYS' FEES AND
COSTS ..................................................................................................................... i

I.    STATEMENT OF FACTS. ....................................................................................1

II.   SETTLEMENT AGREEMENT TERMS...............................................................3

III.  ARGUMENT ........................................................................................................4

A.    This Court Should Approve The Parties' Settlement. ...................................4

1.    The Proposed Settlement Is The Product Of Contested Litigation. ............7

2.    The Settlement Fairly and Reasonably Resolves A Bona Fide .................9

Dispute. ...............................................................................................................9

B.    This Court Should Approve the Requested Service Payment .....................12

Allocation. .........................................................................................................12

C.    The Attorneys' Fees and Expenses Requested Are Reasonable And Warrant This

Court's Approval. .............................................................................................13

1.    One-Third Of The Common Fund Is A Reasonable Fee.............................14

•    *Johnson* Factor 1: Time and Labor Involved...............................................15

•    *Johnson* Factor 2: Novelty and Difficulty of Question Presented..............19

•    *Johnson* Factor 3: Skill Requisite to Perform Legal Service Properly.......19

•    *Johnson* Factor 4: Preclusion of Other Employment..................................20

•    *Johnson* Factor 5: Customary Fee .............................................................20

•    *Johnson* Factor 6: Whether Fee is Fixed or Contingent ............................20

•    *Johnson* Factor 7: Time Limitations Imposed...........................................20

- *Johnson* Factor 8: Amount Involved and Results Obtained ........................................21

- *Johnson* Factor 9: Experience, Reputation and Ability of Attorneys .........................21

    2.    Plaintiffs' Request For Costs And Expenses Is Also Reasonable. .............................22

IV.    CONCLUSION ...........................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Wage & Hour Emp't Litig.*,
  2013 WL 6670602 ............................................................................................................18

*In re BankAmerica Corp. Securities Litig.*,
  210 F.R.D. 694 (E.D. Mo. 2002) ....................................................................................9, 12

*In re Broadwing, Inc. ERISA Litig.*,
  252 F.R.D. 369 (S.D. Ohio 2006) ......................................................................................15

*Bruner v. Sprint/United Mgmt. Co.*,
  2009 WL 2058762 (D. Kan. July 14, 2009) .......................................................................15

*Calderon v. Witvoet*,
  112 F.3d 275 (7th Cir. 1997) .............................................................................................23

*Camden I Condominium Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ...........................................................................................15

*Cimarron Pipeline Constr., Inc. v. National Council on Compensation Ins.*,
  1993 WL 355466 (W.D. Okla. 1993) ................................................................................13

*Cohan v. Columbia Sussex Mgmt., LLC*,
  No. 12 Civ. 3203, 2018 WL 4861391 (E.D.N.Y. Sept. 28, 2018).........................................18

*Collins v. Sanderson Farms, Inc.*
  568 F. Supp. 2d 714 (E.D. La. 2008) ...................................................................................5

*Digidio v. Crazy Horse Saloon and Restaurant*,
  880 F.3d 135 (4th Cir. 2018) ...............................................................................................5

*In re: Dollar General Stores FLSA Litigation*,
  5:09-MD- 1500, 2011 WL 3904609 (E.D.N.C. Aug. 22, 2011).............................................6

*Gaskill v. Gordon*,
  160 F.3d 361 (7th Cir. 1998) .............................................................................................15

*Gottlieb v. Barry*,
  43 F.3d 474 (10th Cir. 1994) .............................................................................................15

*Gundrum v. Cleveland Integrity Servs., Inc.*,
  No. 17-CV-55-TCK-TLW, 2017 WL 3503328 (N.D. Okla. Aug. 16, 2017)............................5

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .................................................................................14

*Horton v. Love's Travel Stops & Country Stores, Inc.*,
No. 19 Civ. 01193 (M.D.N.C.) ...............................................................11

*Kirkpatrick v. Cardinal Innovations Healthcare Sols.*,
352 F. Supp. 3d 499 (M.D.N.C. 2018) ......................................................5

*Koehler v. Freightquote.com, Inc.*,
2016 WL 3743098 (D. Kan. July 13, 2016) .......................................16, 19

*Lamon v. City of Shawnee, Kan.*,
754 F. Supp. 1518 (D. Kan. 1991), *rev'd* in part on other grounds by 972 F.2d
1145...........................................................................................................23

*Lawson v. Love's Travel Stops & Cntry Stores, Inc.*,
17 Civ. 1266 (M.D. Pa.)...................................................................... *passim*

*Little Rock School District v. Pulaski Cnty. Special School District No. 1*,
921 F.2d 1371 (8th Cir. 1990) .................................................................12

*Lucas v. Kmart Corp.*,
234 F.R.D. 688 (D. Colo. 2006) .................................................................6

*Lynn's Food Stores, Inc. v. U.S.*,
679 F.2d 1350 (11th Cir. 1982) .......................................................... *passim*

*Maguire v. Trans World Airlines, Inc.*,
55 F.R.D. 48 (S.D.N.Y. 1972) ...................................................................5

*McLaurin v. Prestage Foods Inc.*,
2011 WL 13146422 (E.D.N.C. September 11, 2011)................................13

*McNeely v. Nat'l Mobile Health Care, LLC*,
No. CIV-07-933-M, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ..............14, 17

*Porter v. W. Side Rest., LLC*,
No. 13-1112-JAR-KGG, 2015 WL 685855 (D. Kan. Feb. 18, 2015) .......................6

*Quintanella v. A&R Demolition, Inc.*,
No. CIV.A. H-04-1965, 2008 WL 9410399 (S.D. Tex. May 7, 2008)....................6

*Rosenbaum v. MacAllister*,
64 F.3d 1439 (10th Cir.1995) ...................................................................15

*Smith v. Diffee Ford Lincoln-Mercury, Inc.*,
298 F.3d 955 (10th Cir. 2002) .................................................................23

*In re Sprint Corp. ERISA Litig.,*
   443 F. Supp. 2d 1249 (D. Kan. 2006) ..................................................................18

*Tanski v. AvalonBay Communities, Inc.,*
   No. 15 Civ. 6260, 2020 WL 2733989 (E.D.N.Y. May 26, 2020) ...........................18

*Wagner v. Loew's Theatres, Inc.,*
   76 F.R.D. 23 (M.D.N.C. 1977) ..........................................................................5, 6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
   396 F.3d 96 (2d. Cir. 2005)..................................................................................15

*Walton v. United Consumers Club, Inc.,*
   786 F.2d 303 (7th Cir. 1986) .................................................................................5

*Weston v. TechSol, LLC,*
   No. 17 Civ. 0141, 2018 WL 4693527 (E.D.N.Y. Sept. 26, 2018).........................18

**Statutes**

28 U.S.C. § 1920.........................................................................................................23

29 U.S.C. § 216(b) ................................................................................................14, 23

Fair Labor Standards Act, 29 U.S.C. § 206(d)...............................................................1

FLSA ............................................................................................................... *passim*

Fed. R. Civ. P 54(d) ..................................................................................................23

**Other Authorities**

Silber and Goodrich, *Common Funds and Common Problems: Fee Objections
   and Class Counsel's Response*, 17 Rev. Litig. 525, 534 (Summer 1998) ..............15

Plaintiff James Stoddard, on behalf of himself and those individuals who have joined this action (together as "Plaintiffs"), with the consent of Defendant Love's Travel Stops & Country Stores, Inc. ("Love's" or "Defendant"), move this Court for an order approving the parties' Settlement Agreement (attached hereto as Exhibit 1)[1], approving as reasonable the Settlement Agreement's proposed award of attorneys' fees and costs, together with the fees and costs needed to effectuate the administration of the settlement and entering the proposed Approval Order, which is attached hereto as Exhibit 2. In support of this motion, Plaintiffs state as follows:[2]

## I.    **STATEMENT OF FACTS.**

On April 7, 2021, Plaintiff J.D. Ellis filed a Collective Action Complaint on behalf of himself and other current and former overtime exempt Operations Managers ("OMs") seeking redress for Fair Labor Standards Act, 29 U.S.C. § 206(d) (the "FLSA") violations. ECF No. 1. On May 24, 2021, Defendant filed a motion to dismiss and compel arbitration in connection with the then named Plaintiff, JD Ellis. ECF No. 20. Plaintiffs opposed Defendant's motion and cross moved to invalidate Love's arbitration agreements. ECF No.27, 28. On September 16, 2021, this Court issued an Order on those motions and on November 1, 2021, the parties made a joint motion to remove the then implemented stay and to amend the complaint. ECF No. 42. On December 7, 2021, Plaintiffs filed their

---

[1] All capitalized terms are defined in the Settlement Agreement. Plaintiffs refers the Court to that agreement and its defined terms for consistency.
[2] Although Love's does not oppose this Motion, and also seeks approval of the settlement agreement, Love's does not adopt or validate the statements or arguments contained herein. The statements and arguments contained herein are Plaintiffs', not Love's.

Amended Complaint and on December 29, 2021, Defendant filed its Answer.  ECF No. 46, 47.  The parties agreed to mediate early and engaged in discovery related to wages and bonus rates for the putative collective.  The mediation was held on January 27, 2022, and was unsuccessful. ECF No. 49. Plaintiffs then filed a motion to conditionally certify the collective of Operations Managers described in their Amended Complaint. ECF No. 55. After which, the parties filed a joint status report and discovery plan. ECF No. 58.  On July 1, 2022, the Court entered an Order granting conditional certification and the issuance of Court-authorized notice to all members of the putative collective, including those individuals that may have executed an arbitration agreement.  ECF Nos. 68-69.  Pursuant to the Court's Order on notice and following extensive negotiation, the parties agreed to a form notice, reminder postcard and consent to join form as well as the procedure for notice. The parties then submitted a joint motion for an order to approve a proposed Notice, Consent to Join Form and Reminder Postcard.  ECF No. 71.  On September 1, 2022, the Court entered an Order granting the parties' Joint Motion for Approval of Court Authorized Notice, Consent to Join Form and Reminder Postcard.  ECF No. 72. Following the opt-in period, a total of 356 OMs were participating in this action including the Plaintiff.  ECF No. 119.  The parties then commenced discovery, aimed at, among other things, the merits of the claims and defenses at issue.  Love's then filed a Motion to Compel Arbitration and Stay the Current Judicial Proceedings for the 151 Opt-In Plaintiffs that had signed an arbitration agreement with Love's.  ECF No. 128.  Plaintiffs opposed and on June 1, 2023, this Court granted Love's Motion to Compel Arbitration and Stay the Current Judicial Proceedings for the 151 Opt-In Plaintiffs that had signed an arbitration agreement with

Love's. ECF No. 125, 128.  Counsel for Plaintiffs readied the aforementioned arbitration filings, to be filed in batches, but before Plaintiffs' Counsel had commenced these actions, the parties agreed to again mediate, this time for all 356 OMs that had opted into this action including those Opt-ins that had been compelled to arbitration.

On September 28, 2023, the parties mediated this action for a second time, on this occasion, with experienced mediator Dennis Clifford.  While the parties did not reach an agreement the day of the mediation, the parties continued to negotiate with one another following the mediation and on October 17, 2023, the parties reached an agreement in principle to resolve the claims at issue in the instant lawsuit.  The parties there after advised the Court.  ECF No. 129.

## II.    SETTLEMENT AGREEMENT TERMS.

The Settlement Agreement is attached hereto as Exhibit 1, and the Court is respectfully referred thereto for the complete terms and conditions of the settlement. However, by way of summary, the key settlement terms include:

- The total Settlement Amount is $2,500,000.00 for all FLSA Collective Members.  Ex. 1 at § 1.11.

- To Class Counsel, one-third of the Settlement Amount for Attorneys' Fees ($833,333.33), plus reimbursement of reasonable out-of-pocket expenses including costs yet to be incurred for administration of the settlement of this action. *Id.* at § 1.11 (a)-(c).

- To Named Plaintiff James Stoddard a $10,000.00 Service Payment Allocation; and to FLSA Collective Member J.D. Ellis a $7,500.00

3

Service Payment Allocation. *Id.* at §§ 1.11 (b); 5.2 (a).

- To Named Plaintiff and each FLSA Collective Member, the Net Fund (Settlement Amount, minus the Court-approved Service Payment Allocation, the Settlement Administrative Costs and the Court-approved Attorneys' Fees, as well as Court-approved Expenses) will be divided, pro rata, based on the alleged pay differential for each week worked as an Operations Manager, at any time from three years and 139 days from the date each FLSA Collective Member filed their consent to join in this Civil Action through January 2, 2021, and otherwise excluding any workweeks such individuals have already released via their participation in the settlement of *Lawson*. *Id.* at § 3.3 (a).

- In exchange for their Gross Individual Settlement Payments, Named Plaintiff and each FLSA Collective Member will release all state and federal claims for unpaid overtime wages, relating back to the full extent of the federal statute of limitations, and continuing through January 2, 2021 for their time as an overtime exempt OM. *Id.* at § 5.1 (a).

## III.    ARGUMENT

### A.    <u>This Court Should Approve The Parties' Settlement</u>.

An FLSA collective action is not a class action – individuals participating affirmatively choose to be bound and represented by counsel, and there are no absent class members whose claims are being settled. *See Digidio v. Crazy Horse Saloon and*

.

*Restaurant*, 880 F.3d 135 (4th Cir. 2018).  Thus, due process concerns present in class action settlements are not present in FLSA opt-in settlements because absent class members are not bound by the case's outcome and thus do not require the same judicial scrutiny. *Wagner v. Loew's Theatres, Inc.*, 76 F.R.D. 23 (M.D.N.C. 1977); *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48 (S.D.N.Y. 1972).  Unlike settlements under Rule 23, FLSA settlements are not required to be subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required.  *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986); *see Kirkpatrick v. Cardinal Innovations Healthcare Sols*., 352 F. Supp. 3d 499, 508 (M.D.N.C. 2018).  The court's role in approving an FLSA settlement is to ensure that the "employer does not take advantage of its employees in settling their claims for wages." *Collins v. Sanderson Farms, Inc.* 568 F. Supp. 2d 714, 719 (E.D. La. 2008).

When reviewing a proposed FLSA settlement, the court must "scrutinize an agreement to settle FLSA claims to ensure that (1) the litigation involves a bona fide dispute and (2) the proposed settlement is fair and equitable to all parties concerned and does not frustrate the purpose of the FLSA." *Gundrum v. Cleveland Integrity Servs., Inc.*, No. 17-CV-55-TCK-TLW, 2017 WL 3503328, at *4 (N.D. Okla. Aug. 16, 2017) (*citing Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1355 (11th Cir. 1982).

The endorsement of a proposed FLSA settlement by both parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess the unique ability to assess the potential risks and rewards of litigation." *Quintanella* v. *A&R Demolition, Inc.,* No. CIV.A. H-04-1965, 2008 WL 9410399, at *5

(S.D. Tex. May 7, 2008). In fact, "[b]ecause the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas* v. *Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006).

Nonetheless, courts have held that settlement of collective claims, in order to effectuate a release, must be presented to the district court for review and determination whether the settlement is fair and reasonable. *In re: Dollar General Stores FLSA Litigation*, 5:09-MD- 1500, 2011 WL 3904609 *2 (E.D.N.C. Aug. 22, 2011) (examining a FLSA collective settlement); *Wagner*, 76 F.R.D. at 23 (same). For the Court to approve a collective settlement, it must find that the litigation involves a *bona fide* dispute and that the proposed settlement is fair and equitable to all parties. The Court may enter a stipulated judgment after scrutinizing the settlement for fairness. And the settlement agreement must contain an award of reasonable attorneys' fees. *Porter v. W. Side Rest., LLC*, No. 13-1112-JAR-KGG, 2015 WL 685855, at *1 (D. Kan. Feb. 18, 2015) (citing *Peterson v. Mortgage Sources, Corp*., No. 08-2660-KHV, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011).

The standard for court approval is straightforward: a district court should approve a fair and reasonable settlement if it was reached as a result of an arm's length resolution of contested litigation to resolve a bona fide dispute under the FLSA. *Lynn's Food Stores,* 679 F.2d at 1352-54. First, the court must be satisfied that the settlement was the product of "contested litigation." *Id.* at 1353. Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute

6

between the parties under the FLSA. *Id.*  Typically, courts rely on the adversarial nature of a litigated case resulting in an arms'-length settlement as *indicia* of fairness. *Id.*  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*  Based upon the contested nature of this case and the quality of the settlement, Plaintiffs respectfully submit that this Court should enter an Order approving the parties' settlement as a fair and reasonable arms-length resolution of a *bona fide* dispute in contested litigation.

### 1.    The Proposed Settlement Is The Product Of Contested Litigation.

Unquestionably, the proposed settlement is the product of contested litigation.  The parties extensively contested the makeup of this action, the putative collective and litigated the issue of whether individuals that had signed arbitration agreements with Love's should receive notice and following issuance of such notice whether they should be compelled to arbitration.  The parties investigated which individuals had signed arbitration agreements and the circumstances surround any such agreements.  The parties then conducted factual investigations regarding the wage and damage issues raised in Plaintiffs' Complaint and Defendant's Answer. Plaintiffs' counsel interviewed Defendant's current and former employees, compared their findings, sought and reviewed pay data. Declaration of Rebecca S. Predovan ("Predovan Decl.") at 3-4, attached hereto as Exhibit "3".  Similarly, Defendant analyzed its records and interviewed its own witnesses to evaluate the veracity of Plaintiffs' allegations and presented its own competing damage calculations at mediation to negate Plaintiffs' damage model and each side asserted how the damages of the

individuals that were compelled to arbitrations should be treated. (Predovan Decl.) at 3-4. The parties also undertook considerable legal analysis of the various issues implicated in this case, including fully analyzing the issues pertaining to final FLSA certification, decertification and the potential for the issues to be presented at trial to be limited by summary judgment. (Predovan Decl.) at 4. Indeed, throughout mediation, the parties exchanged and discussed the caselaw that each party felt was relevant to this matter. (Predovan Decl.) at 3-4. In addition, as is discussed *supra* the parties had extensive disputes concerning the arbitration of claims which required judicial intervention on more than one occasion.

 The settlement of this lawsuit occurred only after two mediation sessions with experienced mediators.  The parties first mediated these claims on January 27, 2022, with Lyle Clemens in an effort to reach a resolution before conditional certification, but the parties regrettably reached an impasse.  (Predovan Decl.) at 4.  Thereafter, over a year later after the parties had the benefit of further motion practice on the issue of arbitration and the issuance of notice, which provided a definite number of FLSA Collective Members, the parties attended a subsequent mediation on September 28, 2023, with experienced mediator Dennis Clifford.  Thus, it was not until the parties had full opportunity to understand the scope of the FLSA Collective, analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue that they were able to reach an agreement. (Predovan Decl.) at 4. Accordingly, this Court should readily conclude that the proposed settlement was the product of contested litigation.

### 2.     The Settlement Fairly and Reasonably Resolves A Bona Fide Dispute.

This settlement is the product of arm's-length negotiations by experienced counsel and provides significant monetary relief to Named Plaintiff and all FLSA Collective Members. It also eliminates the real, inherent risks both sides would bear if this complex litigation continued to resolution on the merits.  Under these circumstances, a presumption of fairness attaches to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (citations omitted).

The litigation was hard fought, and settlement was only achieved after discovery concerning the collective's damages and significant motion practice concerning the makeup of the FLSA collective.  (Predovan Decl.) at 4. Specifically, this discovery included detailed spreadsheets of pay data and documents relating to the allegations in this case.  (Predovan Decl.) at 4.  The pay data in particular required close scrutiny by counsel to craft various damage models that would be impacted by Plaintiffs' ability to prove various claims and or Defendant's ability to prove various defenses.  (Predovan Decl.) at 4.  This litigation also included numerous contested motions on the issue of

9

arbitration, which substantially impacted the size of the FLSA collective and whether notice would issue to same, discovery on the overtime wage damages alleged for the putative collective, the collective that opted in and the segment of the collective compelled to arbitration, and two separate full-day mediations with experienced mediators. (Predovan Decl.) at 3-4. Plaintiffs' counsel also conducted in-depth interviews with FLSA Collective Members and other witnesses regarding their work experiences, compensation and ability to exercise discretion to establish that OMs had been misclassified as overtime exempt employees, and to establish the needed elements to conditionally certify the FLSA collective in this action. (Predovan Decl.) at 4. Following the development of the aforementioned factual record, serious questions of fact and law remain which placed the ultimate outcome of the litigation in doubt. While Plaintiffs claimed, among other things, that Love's failed to act in good faith when it classified its OM position as exempt from overtime pay, Defendant continued to dispute whether Plaintiffs could meet their burden of establishing that Defendant acted willfully. ECF No. 47. Defendant also continued to contest whether the duties of its OM position are sufficiently similar across its operations nationwide to warrant the continued certification at trial of the conditionally certified collective. ECF No. 63. Thus, Plaintiffs faced risk regarding decertification of the FLSA Collective Members.

Moreover, Plaintiffs faced risk regarding the underlying merits and summary judgment. Love's argued that the job duties of OMs were that of true exempt managers and that Plaintiffs could not prevail on their FLSA claims. Further, even if summary judgment motions were denied, Plaintiffs faced the risk of not persuading a jury that they

were misclassified for the work they performed as an OM, using voluminous and potentially conflicting statements concerning the FLSA Collective Members' responsibilities when viewed compared with other OMs.

The Settlement Agreement offers significant payments to the Named Plaintiff and FLSA Collective Members.  Under the settlement formula, the FLSA Collective Members will receive payments based on an equitable formula that takes into account each FLSA Collective Member's number of weeks worked as an OM.  The equitable formula provides a gross average payment per Collective Member of over $7,000.00, which represents a gross per workweek payment of $181, which is a result exceeding similar, recent collective actions litigated against Defendant. *Lawson v. Love's Travel Stops & Cntry Stores, Inc.*, 17 Civ. 1266 (M.D. Pa.) (overtime-wage misclassification claims on behalf of operations managers, the same group at issue here); *see also Horton v. Love's Travel Stops & Country Stores, Inc.*, No. 19 Civ. 01193 (M.D.N.C.) (gender pay disparity claims on behalf of female operations managers).

The Settlement Agreement provides for significant and meaningful relief to the Named Plaintiff and FLSA Collective Members warranting approval.  Further, if the settlement is not approved, any recovery through litigation may not occur until after years of litigation and appeals or, such recovery may not occur at all after trial and appeal.  For these reasons, settlement approval now should be highly favored. *See, e.g., In re BankAmerica*, 210 F.R.D. at 701 ("[I]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."); *see also Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of collective action litigation); *Little Rock*

11

*School District v. Pulaski Cnty. Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors [settlement] agreements.").

Accordingly, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute.

**B.     This Court Should Approve the Requested Service Payment Allocation.**

The parties' Settlement Agreement provides for a Service Payment of $10,000 for Named Plaintiff James Stoddard, and $7,500 for J.D. Ellis both of which provided invaluable service to Class Counsel and, ultimately, the FLSA Collective Members. James Stoddard and J.D. Ellis worked with Class Counsel for over two-and-a-half-years, both before and throughout this litigation, to pursue these claims on behalf of FLSA Collective Members as well as those FLSA collective members that were ultimately compelled to arbitration.  James Stoddard and J.D. Ellis were both instrumental in identifying evidence and statements from other impacted OMs concerning their job duties, and the amount of discretion that could be exercised by the OM position, which allowed for the conditional certification of this action. J.D. Ellis also provided important information concerning Defendant's arbitration and other related employment policies. James Stoddard and J.D. Ellis educated Class Counsel on many of Defendant's documents, policies, and practices, and assisted Class Counsel in preparation for mediation.  This service enabled Class Counsel to obtain the best settlement possible for all FLSA Collective Members.  The requested Service Payment Allocation rewards James Stoddard and J.D. Ellis for their service to the FLSA Collective Members.  This

District has recognized that the time and dedication an individual devotes to a class or collective action lawsuit that inures to the common benefit of others warrants a service award above-and- beyond what the typical class member is receiving. *See, e.g., Cimarron Pipeline Constr., Inc. v. National Council on Compensation Ins.*, 1993 WL 355466 (W.D. Okla. 1993) (awarding $10,000 service award to each of three class representatives); *see also McLaurin v. Prestage Foods Inc.*, 2011 WL 13146422 *4 (E.D.N.C. September 11, 2011) (approving service awards of $10,000 and $5,000 to lead Plaintiffs).  Accordingly, this Court should approve the modest Service Payment Allocations requested in this case as a reward for the Named Plaintiffs' contributions to the case and to the FLSA Collective Members' recovery as a whole.

### C.    The Attorneys' Fees and Expenses Requested Are Reasonable And Warrant This Court's Approval.

Plaintiffs seek an award of one-third of the Settlement Amount ($833,333.33) as their attorneys' fees incurred in this case, plus reimbursement of $30,895.25 for their costs and expenses.  Though an award of attorneys' fees in an FLSA settlement is mandatory, the Court has discretion to determine the reasonableness of the fee amount. *See Lynn Food Stores,* 679 F.2d at 1354.

Considering the standard for percentage fees awarded in other common fund cases, and also applying the factors set forth in *Johnson v. Georgia Highway Express, Inc.* as explained below, the attorneys' fees Plaintiffs seek in this case are reasonable and warrant this Court's approval.  *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *14 (W.D. Okla. Oct. 27, 2008)(adopting the *Johnson*

13

factors).

### 1.    One-Third Of The Common Fund Is A Reasonable Fee.

Under the FLSA, prevailing plaintiffs are entitled to recover their reasonable attorneys' fees. *See* 29 U.S.C. § 216(b). In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Following this guidance, the parties agreed that Plaintiff's Counsel would receive one-third ($833,333.33) of the Settlement Fund as attorneys' fees, plus reimbursement of out-of-pocket costs and expenses in the amount of $30,895.25, as well as reimbursement for costs yet to be incurred for administration of the settlement of this action.

In common fund cases, the preferred method for awarding attorneys' fees to a prevailing plaintiff is to award a percentage of the common fund created by the litigation. *Rosenbaum v. MacAllister,* 64 F.3d 1439, 1445 (10th Cir.1995); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("we believe that the percentage of the fund approach is the better reasoned [approach] in a common fund case").

The percentage of the fund approach aids litigants and the courts because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the *efficient prosecution and early resolution* of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 120 (2d. Cir. 2005) (emphasis added)

14

(quoting *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, *25 (S.D.N.Y Nov. 26)).  Thus, a fee award based on a percentage of the fund "incentivizes lawyers to maximize the Class recovery." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006); *see also Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome"); Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 534 (Summer 1998) ("Hence, under the percentage approach, the class members and the class counsel have the same interest – maximizing the recovery of the class.").

The percentage of the fund that Plaintiffs seek here falls squarely within the range Courts within this circuit and others have approved in other collective action cases. *Bruner v. Sprint/United Mgmt. Co.*, 2009 WL 2058762, at *8 (D. Kan. July 14, 2009)(noting the same about the requested fee award, which was 33% of the common fund); *Koehler v. Freightquote.com, Inc.*, 2016 WL 3743098, at *8 (D. Kan. July 13, 2016) (also approving fee award equal to 33% of the common fund).  Accordingly, an award of one-third of the common fund plus out-of-pocket costs and expenses is abundantly reasonable in this case and is in accordance with the standard set in this District as well as nationally.

- *Johnson* Factor 1: Time and Labor Involved

This case required Class Counsel to expend significant time and labor in pursuing these claims.  Specifically, Class Counsel have litigated the claims in this case for over

two and a half years and have collectively invested over 870 hours (Predovan Decl. at ¶ 5) working on this case with no assurance of any recovery at all. Declaration of Gregg I. Shavitz ("Shavitz Decl." at ¶ 20), attached hereto as Exhibit "4"; Declaration of Mark A. Waller ("Waller Decl." at ¶ 8), attached hereto as Exhibit "5". These hours include time spent investigating the facts of this case; interviewing OMs regarding their work experiences and their knowledge concerning Defendant's policies and procedures; extensive motion practice in connection with Defendant's efforts to enforce its arbitration agreements; successfully briefing Plaintiffs' motion on conditional certification; negotiating the notice and consent to join form sent to the putative collective; administering notice to putative opt-in plaintiffs; analyzing pay and time records; creating a damages model and performing damage calculations in preparation for mediation; mediating this action twice; commencing the arbitration process for five opt-ins; negotiating a settlement favorable to all Class Members; devising a settlement allocation formula to ensure an equitable distribution of funds; and drafting the Settlement Agreement and approval papers. (Predovan Decl.) at 4.

And, while courts within this Circuit have applied a "lodestar cross-check" to determine whether fees sought are reasonable, Class Counsel is only seeking a 1.6 multiplier of their fees, which is eminently reasonable given what is approved in like cases. *Supra* at 18. As of the filing of this application, Class Counsel's collective lodestar is approximately $515,440.00 at their standard hourly rates.[3] (Predovan Decl.) at 5;

---

[3]     Class Counsel's standard hourly rates have been consistently approved by courts throughout the country. (Predovan Decl.) at 5; (Shavitz Decl.) at ¶ 22.

(Shavitz Decl.) at ¶ 20; (Waller Decl.) at ¶ 8.   Where the other *Johnson* factors, combined, warrant approval of the common fund fee sought by class counsel, the Court need not engage in a detailed, lodestar-type analysis of the "time and labor required" factor. *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *15 (W.D. Okla. Oct. 27, 2008) (citing *Brown,* 838 F.2d at 456 ("We hold here only that in awarding attorneys' fees in a common fund case, the 'time and labor involved' factor need not be evaluated using the lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to other factors, the basis of which is clearly reflected in the record.").  The Court in *McNeely* *further noted that,* "[t]o overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services." *Id*.

Attorneys who litigate on a wholly or partially contingent basis expect to receive significantly higher effective hourly rates in cases where compensation is contingent on success, particularly in hard-fought cases where, like in the case at bar, the result is uncertain.  This does not result in any windfall or undue bonus. In the legal marketplace, a lawyer who assumes a significant financial risk on behalf of a client rightfully expects that his or her compensation will be significantly greater than if no risk was involved (i.e., if the client paid the bill on a monthly basis), and that the greater the risk, the greater the "enhancement." Adjusting court-awarded fees upward in contingent fee cases to reflect the risk of recovering no compensation whatsoever for hundreds of hours of labor simply makes those fee awards consistent with the legal marketplace, and in so doing, helps to

ensure that meritorious cases will be brought to enforce important public interest policies and that clients who have meritorious claims will be better able to obtain qualified counsel.

The fees sought by Class Counsel are certainly reasonable considering that courts routinely approve multipliers above and beyond the lodestar as reasonable fee awards in class cases. *See*, *e.g.*, *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 Civ. 3203, 2018 WL 4861391, at *5 (E.D.N.Y. Sept. 28, 2018) (collecting cases in which courts routinely approve fees that are "two to six times the lodestar"); *Weston v. TechSol, LLC*, No. 17 Civ. 0141, 2018 WL 4693527, at *9 (E.D.N.Y. Sept. 26, 2018) (same); *accord Tanski v. AvalonBay Communities, Inc.*, No. 15 Civ. 6260, 2020 WL 2733989, at *3 (E.D.N.Y. May 26, 2020) (collecting cases with multipliers ranging from 2.02 to 3.5 and noting that multipliers exceeding 4 are routine); *In re Bank of Am. Wage & Hour Emp't Litig.*, 2013 WL 6670602, at *3 (approving a fee award representing a 1.10 multiplier of the lodestar); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (finding that percentage fee award resulting in a lodestar multiplier of 1.18 was "imminently reasonable" based on counsel's risks associated with taking the case); *Koehler*, 2016 WL 3743098, at *6 (approving fee award equivalent to 1.3 times the Court's determined lodestar amount as reasonable).

As such, given that Plaintiffs seek to recover Class Counsel's time and labor invested in this case, this factor weighs heavily in favor of approving the fee as reasonable. It is important to remember that this is Class Counsels' only opportunity to be awarded fees for the work on this case. However, their work to administer the settlement will continue after this application without any compensation. (Predovan

Decl.) at 5; (Shavitz Decl.) at 24. As an example, there will be inquiries from the FLSA Collective Members regarding the terms and consequences of the settlement and the computation and payout of the settlement. Counsel will perform this work without any additional compensation. *Id.*

- *Johnson* Factor 2: Novelty and Difficulty of Question Presented

Large, nationwide FLSA collective actions against a nationwide retailer are both procedurally and substantively complex. This presents unique hurdles to establishing both liability and damages in a case such as this. Moreover, Defendant contends that nationwide certification could not be maintained post a decertification challenge, in part, because the OMs did not perform similar work nationwide. As such, this factor weighs in favor of approving the fee requested.

- *Johnson* Factor 3: Skill Requisite to Perform Legal Service Properly

Out-of-state Class Counsel practices almost exclusively in plaintiff-side collective actions. (Predovan Decl.) at 6-8; (Shavitz Decl.) at ¶ 8, 12. Class Counsel stays abreast of the changing law to ensure they maximize their clients' recovery in their cases pending all across the United States. This is because it is a unique area of law, the landscape of which changes regularly as a result of growing jurisprudence spanning the entire country. Due to the nature of nationwide FLSA collective litigation against large retailers, attorneys handling these cases must also be prepared to make these investments with the very real possibility of ultimately obtaining no attorney fees or recovery of costs expended. This type of risk is outside the scope of risk that most attorneys and firms can and are willing to handle.

- *Johnson* Factor 4: Preclusion of Other Employment

Class Counsel litigated this case for over two and a half years. During that time, the work performed by Class Counsel placed significant demands on Class Counsel's time and resources. (Shavitz Decl.) at ¶ 15-16. For example, in anticipation of reviewing the millions of pages of documents that were going to be produced in this case, Class Counsel turned down other potentially lucrative work. As Class Counsel's ability to take on additional cases during the course of this litigation was limited, this factor weighs in favor of approval.

- *Johnson* Factor 5: Customary Fee

Class Counsel customarily charges a one-third contingency fee, and that is the fee for which both Named Plaintiffs contracted for representation in this case. (Predovan Decl.) at 2; (Shavitz Decl.) at ¶ 18. Class Counsel has agreed to only seek a one-third contingency fee with this Settlement Agreement, and this factor weighs in favor of approval.

- *Johnson* Factor 6: Whether Fee is Fixed or Contingent

As explained for Factor 5, Class Counsel took this case on a contingency-fee basis. Accordingly, Class Counsel undertook this litigation with the risk of obtaining nothing if no recovery was obtained for Plaintiffs or the FLSA Collective. Moreover, Class Counsel's contingency arrangement required them to invest both time and expenses with no guaranty of recoupment. (Predovan Decl.) at 2; (Shavitz Decl.) at ¶ 15-18. This factor favors fee approval.

- *Johnson* Factor 7: Time Limitations Imposed

20

While there were no unusual time limitations imposed by this case, the nature of this complex litigation posed a significant time commitment, as discussed in more detail for Factors 1 and 4 above.

- *Johnson* Factor 8: Amount Involved and Results Obtained

Class Counsel obtained an excellent result for all Class Members, as described in detail above and in the accompanying Settlement Agreement. The total amount of unpaid wages was $ 2,590,939.96. This settlement of $2,500,000.00, will on average pay each FLSA Collective Member a gross amount of approximately just over $7,000.00. For each eligible work week, the FLSA Collective Members will receive a gross payment of approximately $181 per week, which is an excellent value for their claims, particularly when considering the inherent risks to continued litigation and the very real possibility that Plaintiff would not prevail on every contested issue in this action, and that these amounts *surpass* the figures achieved for identical claims in *Lawson v. Love's Travel Stops & Cntry Stores, Inc*., 17 Civ. 1266 (M.D. Pa.) (overtime-wage misclassification claims on behalf of operations managers, the same group at issue here).

- *Johnson* Factor 9: Experience, Reputation and Ability of Attorneys

Class Counsel have significant experience in litigating collective action cases across the country and enjoy impeccable reputations for success in this area of law. The attorneys at Hepworth Gershbaum and Roth, PLLC assigned to this case collectively have more than 82 years of legal experience and have served as class counsel in dozens of collective actions. (Predovan Decl.) at 6-9. Similarly, the attorneys at Shavitz Law

Group, P.A. assigned to this case collectively have more than 69 years of legal experience and have served as class counsel in dozens of collective actions. (Shavitz Decl.) at ¶ 12. The attorneys at Waller Jorgenson, PLLC served as local counsel in this action and have worked extensively representing Plaintiffs in complex cases such as this including FLSA collective actions, consumer class actions, and mass tort actions. (Waller Decl.) at 4. Together, Class Counsel have recovered many millions of dollars on behalf of opt- in plaintiffs across the country. (Predovan Decl.) at 7-8. This factor weighs in favor of fee approval.

## 2. Plaintiffs' Request For Costs And Expenses Is Also Reasonable.

An award of reasonable attorneys' costs and expenses is also mandatory under the FLSA. *See* 29 U.S.C. § 216(b). This includes "reasonable out of pocket expenses" that go "beyond those normally allowed under Fed. R. Civ. P 54(d) and 28 U.S.C. § 1920." *Smith v. Diffee Ford Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002); *Lamon v. City of Shawnee, Kan.*, 754 F. Supp. 1518, 1524 (D. Kan. 1991) (noting expenses generally include "all reasonable out-of-pocket expenditures" that are not "normally absorbed as part of law firm overhead"), *rev'd* in part on other grounds by 972 F.2d 1145; *see also Calderon v. Witvoet,* 112 F.3d 275, 276 (7th Cir. 1997) (observing that expenses such as travel are not "costs" under 29 U.S.C. § 1920, but "are nonetheless reimbursable-but as part of the award for attorneys' fees, because travel and meal expenses are the sort of things that a lawyer includes with a bill for professional services.").

Class Counsel requests reimbursement for a total of $30,895.25 in expenses,

which have already been incurred. (Predovan Decl.) at 6; (Shavitz Decl.) at ¶ 28.  In addition, Class Counsel also seeks approval for settlement administration costs not yet incurred, for which Class Counsel received a not to exceed quote in the amount of $19,900.00 from Rust Consulting, Inc., the company that handled the notice transmitted to the putative collective in this action.  This amount once incurred would be deducted as an additional cost from the common fund.  These expenses were reasonably and necessarily incurred in the prosecution of the case. *Id*. These expenses include filing fees, issuance of notice and mediation fees for two mediations.  *Id*.  Accordingly, Plaintiffs request that this Court approve Class Counsels' award of costs and expenses in the amount of $30,895.25.[4]

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs request that this Court: (i) approve parties' Settlement Agreement as fair and reasonable and enter the proposed Approval Order, which is attached hereto as Exhibit 2; and (ii) entering any other relief this Court deems appropriate.

Date: February 2, 2024
        New York, New York

                                Respectfully submitted,

                                ***/s/ Rebecca S. Predovan***
                                Rebecca S. Predovan*
                                Marc S. Hepworth*

---

[4]      In addition, Plaintiffs will retain a third-party administration to administer the settlement of this case.  *See* Ex. 1 (Settlement Agreement) at § 1.15.  The Settlement Administrative Costs would be paid out of the Gross Fund. *Id.* at §§ 1.11; 1.16.  The Settlement Administrative Costs have yet to be incurred and are separate from Class Counsel's incurred expenses as detailed in this Section.

Charles Gershbaum*
David A. Roth*
**HEPWORTH, GERSHBAUM &
ROTH, PLLC**
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone: (212) 545-1199
Facsimile: (212) 532-3801
mhepworth@hgrlawyers.com
cgershbaum@hgrlawyers.com
droth@hgrlawyers.com
rpredovan@hgrlawyers.com

Paolo C. Meireles*
Gregg I. Shavitz*
Logan A. Pardell*
**SHAVITZ LAW GROUP, P.A**.
951 Yamato Rd, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
Facsimile: (561) 447-8831
pmeireles@shavitzlaw.com
gshavitz@shavitzlaw.com
lpardell@shavitzlaw.com

Mark A. Waller
J. David Jorgenson
**WALLER JORGENSON, PLLC**
401 South Boston Avenue
Suite 500
Tulsa, Oklahoma 74103
Telephone: (918) 629-3350
Facsimile: (918) 699-0325
mwaller@wjwattorneys.com
www.wjwfirm.com

Attorneys for Plaintiffs and the Collective

## Certificate of Service

I certify that on the date set forth below, I electronically filed the foregoing *Plaintiffs' Unopposed Motion to Approve Settlement Agreement Including Award of Attorneys' Fees and Costs* with the Clerk of Court using the CM/ECF system which will send notification of the filing to the following:

Molly A. Aspan
Practus LLP
11300 Tomahawk Creek Pkwy, Ste 310
Leawood, KS 66211
Attorneys for Defendant

This 2nd day of February, 2024.

25